Gerald D. WELLS et al., Appellants,

v.

FISCAL COURT OF JEFFERSON COUN-TY, Kentucky et al., Appellees.

Court of Appeals of Kentucky.

June 5, 1970.

Rehearing Denied Sept. 25, 1970.

Harry Lee Meyer and Kenneth S. Handmaker, Handmaker, Weber & Meyer, Louisville, for appellants.

Claude S. Eddleman, Jr., Joseph B. Helm, John A. Nold, Helm, Eddleman & Jay, Louisville, for appellees.

Stanley Badesch, Louisville, for appellees William Dohrman, William Dohrman, Inc., and Harold V. Bomar, Jr.

Edith F. Stanley, Jefferson County Atty., Michael M. McMahon, Asst. Jefferson County Atty., Louisville, John Breckinridge, Atty. Gen., Frankfort, for appellees, Fiscal Court of Jefferson County, Kentucky, and Individual Members thereof.

CULLEN, Commissioner.

On recommendation of the Louisville & Jefferson County Planning Commission, the fiscal court of Jefferson County adopted a resolution rezoning a parcel of land in the county from R–4 (single-family) to R–7 (multi-family).[1] Several persons owning single-family residences in the vicinity of the rezoned parcel brought action against the fiscal court and the owners of the rezoned parcel, to contest the validity of the rezoning. The circuit court upheld the rezoning, and from its judgment the protestants have taken this appeal. As shall hereinafter be developed, the principal issue is whether the rezoning was arbitrary.

The parcel in question lies east of Louisville, abutting on the south side of U. S. Highway No. 42, in an area between that highway's intersection with U. S. Interstate Highway No. 264 (Watterson Expressway) near the eastern boundary of Louisville and the point where U. S. 42 passes under Interstate Highway No. 71, farther to the east. The parcel is unimproved and contains approximately 6½ acres. It is in the form of a right-angle triangle, with the hypotenuse fronting on U. S. 42 (for 1003 feet). On the southwest and on the southeast there has been some subdivision platting but little development. Abutting the southeast side of the parcel there is located a small sewage disposal plant constructed to serve an adjoining subdivision and originally planned to serve a proposed subdivision on the subject parcel. The area on the north side of U. S. 42 generally is occupied by high quality residences, but the tract immediately across from the subject parcel is undeveloped.

The comprehensive zoning plan for Jefferson County originally was adopted in 1943. The general area here in question, as was most of the suburban territory in the county, was zoned for single-family residences. In the immediate area of the subject parcel there had been no zoning changes since 1943, although there had been changes some 1,500 feet to the west of the subject parcel, where there had been considerable commercial development.

■ The governing statute, KRS 100.-213, requires that one of three designated alternative findings of fact be made as a condition of the granting of a map amendment. The third one, which was made by the planning commission and by the fiscal court in the instant case, is thus stated in the statute:

"That there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area."

It will be observed that the statute speaks in terms of the "area," thus seeming to contemplate a change in the character of a neighborhood or section of a community which warrants a change in the zoning treatment of that neighborhood or section. The change in zoning treatment would not necessarily involve a change in the zoning classification of the entire area, but could consist of the reclassification of one or more sites for uses suitable to the current character of the area, so long as it did not constitute "spot" zoning.

■ The real evil of "spot" zoning consists in the reclassification of a site for a use not consistent with the character of the neighborhood or area; the evil is not in the *preference* of one lotowner over anoth-

1. The owners propose to construct a ten-story apartment building.

er in the selection of the particular site for a use appropriate to a neighborhood or area. Cf. Shemwell v. Speck, Ky., 265 S.W.2d 468. If, in a neighborhood of one general use classification, a few uses of another kind are desirable, obviously there must be a selection of the sites for the latter uses, and often, as a practical matter, the selection may be simply a matter of first come, first served. This is particularly true in regard to such uses as multiple-family dwelling and neighborhood commercial uses, where the lines of demarcation of areas are not as clear and distinct as is the case with industrial uses.

■ The appellants herein complain that the rezoning was arbitrary and constituted "spot" zoning; also, that the findings of fact by the *trial court* are clearly erroneous. We think these contentions all are embraced within the one that the rezoning was arbitrary, because "spot" zoning is merely a kind of arbitrary action, and the findings of the trial court, claimed to be erroneous, are in substance that the rezoning was *not* arbitrary. The answer to the contention is to be found in a determination of whether the evidence on which the zoning authorities acted supported their action. In this connection we note that the function of the courts in reviewing the action of a zoning authority is to determine whether the action was arbitrary on the basis of the evidence the authority acted upon; action not supported by substantial evidence is arbitrary; and thus applies equally to action of a legislative body or an administrative body. See American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450; Johnson v. Lagrew, Ky., 447 S.W.2d 98; Fallon v. Baker, Ky., 455 S.W.2d 572 (this day decided). This is particularly true under the present statute, KRS 100.213, which requires a finding of specific facts as a condition of granting a zoning map amendment. So we shall consider the evidence on which the zoning authorities acted.

■ There was evidence that since the original zoning in 1943 there had been little single-family-residence development on the south side of U. S. 42 in the neighborhood; there had been a tremendous growth of traffic on U. S. 42, and new major arteries for traffic had been constructed to the west and to the east; a necessity for multiple-family residences in this general area had developed by reason of social and economic changes; provision for density of development along major traffic arteries had become desirable; there was a growing demand for apartment facilities in the neighborhood of single-family-residence areas; there had been considerable commercial development on the west edge of the area. Actually, the evidence showed that the area on the south side of U. S. 42 had not developed for luxury single-family residences, as originally anticipated, and that there had been a change in public desire as to kinds of housing in areas of this nature.

We think the evidence fully warranted the finding of the zoning authorities that there had been major changes in the *area* within the meaning of KRS 100.213(2). This leaves for consideration the question of whether the rezoning of the particular site was arbitrary. On that question there was evidence that the tract was peculiarly adaptable for apartment use because of its size and the fact that it abutted on a busy highway. It lacked adaptability for single-family residences because of its topography and because of the proximity of the sewage treatment plant on the southeast. We think the evidence justified the selection of this site for reclassification. The fact that other sites might additionally or alternatively have been reclassified does not place this in the category of "spot" zoning.

It is our conclusion that the circuit court correctly found that the rezoning was not arbitrary.

■ The appellants raise other points, one of which is that the entire 1966 Zoning

Act, KRS Chapter 100, is unconstitutional because it does not provide adequate "standards." Upon careful examination of the argument it appears that the real contention is that the statute does not provide adequate *procedural* standards such as to insure due-process procedures. In our opinion it is not necessary for the statute itself to spell out due-process procedures for hearings—the standards of due-process procedures are established by the case law and apply whether or not expressed by statute. In the instant case the parties were given a full hearing before the planning commission, and another one before the fiscal court, and there is no complaint of lack of due process in the actual conduct of the hearings. In this connection we may observe that although the statute does not provide expressly for a hearing before the fiscal court (or the city legislative body), it is clear that for the fiscal court (or city legislative body) to make a valid (unarbitrary) *finding* of fact under KRS 100.213 it would have to be supported either by the evidence heard before the planning commission (and considered by the fiscal court) or by evidence independently heard by the fiscal court.

■ There is some suggestion by the appellants that the statute lacks a specification of *substantive* standards. We find no merit in this because the statute contains the customary statements of purposes, principles and objectives of zoning which have characterized zoning statutes from the days of Euclid, Ohio v. Amber Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, and which never to our knowledge have been held deficient as to "standards." Furthermore, this is just another facet of the overall question of arbitrariness.

In passing, we note the prospect that the appellants might profit none from a holding that the entire zoning statute is unconstitutional, because this might leave Jefferson County in a completely *unzoned* status in which the appellee property owners would be free to build anything they pleased on this lot (barring a nuisance).

■ The appellants maintain that the trial court erred in refusing to allow them to introduce evidence on the merits of the rezoning. Under the decision in American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450, the ruling was correct.

■ Another contention is that a proposed three-story garage on the rezoned parcel, for storage of the automobiles of the tenants of the apartment building, is not permissible in the R–7 classification. The owners plan the construction of a ten-story apartment building, with 149 apartment units. The proposed three-story garage will be attached to the buliding and will be of similar architectural design. (Apparently these plans were submitted pursuant to KRS 100.203(2).) The regulations for R–7 zones require that off-street parking be provided, and they permit "accessory" uses, defined as uses "customarily incidental to and subordinate to the principal use of the land or buliding, and located on the same lot with such building or principal land use." The circuit court found that the proposed garage came within the definition of an accessory use. The appellants, claiming error, rely on Selligman v. Western and Southern Life Insurance Company, 277 Ky. 551, 126 S.W.2d 419. There the zoning regulation permitted garage buildings only when "constructed as a part of the main building." In that case the court found that the proposed garage would not be constructed as a part of the main building. We do not consider that holding to be controlling on the question of whether the proposed garage in the instant case is an "accessory" use within the meaning of the current regulation. Parking space certainly is an accessory use, and we find nothing in the regulations to suggest that horizontal open space is permissible whereas vertical covered space is not. We are inclined to agree with the circuit court that from an aesthetic point of view the garage building, architecturally compatible with the main building, would be preferable to a large,

open parking lot. We concur in the holding that the garage building is a valid accessory use.

Finally, the appellants complain of an adverse ruling by the circuit court on their plea that the *building permit* issued to the owners of the subject parcel be declared void because it was issued in violation of a requirement of the building code that detailed plans and specifications be submitted with the application for a building permit. We doubt that this question belongs in his lawsuit, because there are administrative remedies which the appellants could have pursued. In any event, the evidence indicated that the detailed plans and specifications would be submitted before construction was begun, and if not the permit would be revoked, so we agree with the circuit court that there is no real danger of any material departure from the requirements of the building code.

The judgment is affirmed.

All concur.